# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| JOHN HENRY HEDRICK, III, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:17-cv-00966-JEO |
| | ) |
| NANCY BERRYHILL, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff John Henry Hedrick, III, brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying him disability insurance benefits. (Doc. 1).¹ The case has been assigned to the undersigned United States Magistrate Judge pursuant to this court's general order of reference. The parties have consented to the jurisdiction of this court for disposition of the matter. (*See* Doc. 12). *See* 28 U.S.C. § 636(c), FED. R. CIV. P. 73(a). Upon review of the record and the relevant law, the undersigned finds that the Commissioner's decision is due to be reversed and remanded for further proceedings consistent with this opinion.

---

¹References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

## I. PROCEDURAL HISTORY

Plaintiff filed for disability benefits, alleging that he was disabled beginning March 17, 2014. (R. 93, 144-45).[2] After his application was denied by the State Agency, he requested a hearing before an Administrative Law Judge ("ALJ") on August 7, 2014. An ALJ held a hearing on April 7, 2016 (R. 38-78) and issued a decision on June 17, 2016, finding Plaintiff was not disabled. (R. 22-34). The Appeals Council denied Plaintiff's request for review on April 28, 2017. (R. 1). The Commissioner's final decision is ripe for judicial review. *See* 42 U.S.C. § 405(g).

## II. FACTS

Plaintiff was 60 years old at the time of the ALJ's decision. He has worked in the past as a general manager, a supervisor of underground surface mines, a safety department supervisor, a safety director, and a plant superintendent. (R. 31, 70-71). He last engaged in substantial gainful employment on March 13, 2014. (R. 21).

Following an administrative hearing, the ALJ determined Plaintiff has the following severe impairments: a history of complex partial epileptic seizure;

---

[2]References herein to "R. __" are to the administrative record found at Docs. 6-1 through 6-9 in the court's record.

idiopathic peripheral neuropathy; vertigo and vertiginous syndrome; status post right ankle fusion; coronary artery disease with stent placement and carotid artery stenosis; hypertension; hyperlipidemia; obesity; and, a history of alcohol dependence in sustained remission. (R. 23). The ALJ also found that Plaintiff retained the residual functional capacity ("RFC") to perform medium work in close proximity to others that involves frequent balancing, stooping, and use of right foot controls; occasional crouching, kneeling, crawling, use of bilateral hand controls, and ramp and stair climbing; and no ladder or scaffold climbing or exposure to unprotected heights. (R. 26-31). He also found that Plaintiff could not return to his previous work, but could perform other work as a hand packager, a laborer or an off bearer. (R. 32-33). He then concluded that Plaintiff was not disabled. (R. 33).

### III. STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of the court is to determine whether the Commissioner's decision is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The court must "scrutinize the record as a whole to determine if the decision

reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

The court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *See Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## IV. STATUTORY AND REGULATORY FRAMEWORK

To qualify for benefits, a claimant must show the inability to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Social Security Act requires a five step analysis. 20 C.F.R. §§ 404.1520(a)(4). Specifically, the Commissioner must determine in sequence:

> whether the claimant: (1) is unable to engage in substantial gainful activity; (2) has a severe medically determinable physical or mental impairment; (3) has such an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform his past relevant work, in light of his residual functional capacity; and (5) can make an adjustment to other work, in light of his residual functional capacity, age, education, and work experience.

*Evans v. Comm'r of Soc. Sec.*, 551 F. App'x 521, 524 (11th Cir. 2014)[3] (citing 20 C.F.R. § 404.1520(a)(4)). The plaintiff bears the burden of proving that he was disabled within the meaning of the Social Security Act. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The applicable "regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Id*.

## V. DISCUSSION

Plaintiff argues that (1) the ALJ failed to afford proper weight to the opinion

---

[3]Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

of State Agency Consultant Dr. William Russell May and (2) the ALJ's RFC findings are unsupported and not based on substantial evidence. (Doc. 8 at 5-11). Each will be addressed below.

### A. Dr. May

Plaintiff suffers from a multitude of medical issues. During his hearing testimony, he stated he discontinued working due to balance issues, back pain, short-term memory problems, and concentration problems. (R. 48). He reported having difficulty standing and walking due to balance issues. He attributes the problem to neuropathy. (R. 55-56). He uses a cane for ambulation. He stated that home exercises and an epidural injection have done nothing to relieve the pain in his back. (R. 57-58). He stated that he can sit for 20 to 30 minutes before the pain causes him to stand. However, he is only able to stand for a few minutes before needing to sit. (R. 59). He rated his pain as a 6 or 7 on a 10-point pain scale. He estimated that he would be limited to lifting a gallon of tea or milk before having severe back pain. (R. 63-64). He also stated that he has difficulty concentrating for any period of time. (R. 67).

The State Agency requested that Dr. May examine Plaintiff. Dr. May did so on June 14, 2014. With regard to Plaintiff's spine and extremities, Dr. May found that Plaintiff had scaring on his "left first toe" consistent with a prior injury from a

6

lawnmower. He noted Plaintiff had good movement and sensation in the toe. Plaintiff's gait was normal without an assisted device. He "had some difficulty with walking on heels and toes" and he had "some difficulty with ... heel-to-toe ambulation." (R. 380). Dr. May noted that Plaintiff had to brace with the wall "slightly" when completing his tasks. (*Id.*) Dr. May further noted that Plaintiff had a limited range of motion in his right ankle. (R. 376 & 380). Premised on his full examination, Dr. May diagnosed Plaintiff with seizures, coronary artery disease, hypertension, and lower extremity limitations. (R. 380-81). Dr. May, concluded that Plaintiff "could perform any forms of employment," but would have difficulty ambulating significant distances greater than a few blocks and doing jobs "involving greater ambulation" than a few blocks because of problems with his left knee and right ankle. (R. 381).

> The ALJ afforded "partial weight" to Dr. May's opinion. He stated:
>
> This opinion is assigned partial weight because it is internally inconsistent. Dr. May did not provide [a] detail[ed] explanation of the extent of the claimant's limitation other than that the claimant would have "some difficulty" ambulating. Further, his own exam findings showed the claimant ambulated relatively normal without an assistive device, his range of motion was normal except for diminished ankle flexion extension, and his straight leg raise was normal.... It appears Dr. May relied heavily on the claimant's self-report that he could not ambulate more than several blocks. Accordingly, his opinion is given only partial weight.

(R. 30-31 (citation omitted)).

7

Plaintiff argues that if the ALJ had given proper weight to Dr. May's opinion, he would be deemed disabled based upon his severe limitations.[4] (Doc. 8 at 6-8). He also argues that the ALJ erred in affording only partial weight to Dr. May's opinion. (*Id*. at 6-8). The Commissioner responds that the ALJ provided "good reasons for declining to adopt or give significant weight to Dr. May's opinion." (Doc. 10 at 7). Thus, the pertinent issue is whether substantial evidence supports the ALJ's assessment of Dr. May's opinion. The court finds that there is sufficient evidence to support the ALJ's decision to reject the portion of Dr. May's opinion concerning Plaintiff's limitations.

"Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of the process for determining disability. An ALJ may reject any medical opinion if the evidence supports a contrary finding." *Stallwroth v. Berryhill*, 3:17-cv-81/LAC/EMT, 2018 WL 1551909, *8 (N.D. Fla. Feb. 28, 2018), report and recommendation adopted, 2018 WL 1542387 (N.D. Fla. Mar. 29, 2018) (citing *Sryock v. Heckler*, 764 F.2d 834,

---

[4]Plaintiff also argues that the ALJ did not properly evaluate Medical-Vocational Guideline Rule 202.06 regarding Dr. May's evidence. Grid Rule 202.06 provides that a "person of advanced age" (55 years old or older (*See* 20 C.F.R. § 404.1563(e)) who is a high school graduate or more, where that educational level does not provide for direct entry into skilled work, and has skilled or semi-skilled skills that are not transferable is categorized as "disabled." 20 C.F.R. pt. 404, subpt. P, app. 2, table no. 2, § 202.06; *see also Miller v. Comm'r of Soc. Sec.*, 241 F. App'x 631. 634-35 (11th Cir. 2007). This claim will be addressed below separately.

8

835 (11th Cir. 1985)). Unlike a treating physician's opinion, the opinion of a non-treating source is not entitled to any special deference. *See* 20 C.F.R. § 1527(c)(2). "[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor, and the failure to do so is reversible error." *Id*. (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)).

Here, the ALJ only partially credited Dr. May's report regarding Plaintiff's limitations because he found it was inconsistent with his exam findings. (R. 30-31). Plaintiff's challenge to the ALJ's conclusion on this issue involves three areas: (1) Dr. May's reported observations during the examination; (2) Dr. May's conclusory statement regarding Plaintiff's ability to ambulate; and (3) Plaintiff's self-reports.

### 1. Dr. May's Observations

In discounting Dr. May's opinion about Plaintiff's limitations, the ALJ articulated various observations by Dr. May during the examination that were inconsistent with his conclusion. Specifically, the ALJ noted Dr. May's observation that Plaintiff ambulated "relatively normal[ly] without an assistive device" during the examination. (R. 30, 380). The ALJ also noted Dr. May's finding that Plaintiff had normal straight leg raise and range of motion except for diminished ankle flexion extension. (*Id.*) Elsewhere in his decision the ALJ noted

9

Dr. May's observation that Plaintiff had no cerebellar, cranial nerve, or deep tendon reflex abnormalities. (R. 28, 380). Although not specifically mentioned by the ALJ, Dr. May also observed that Plaintiff could get on and off the examination table and rise from a chair without assistance. (R. 379). Dr. May also noted that Plaintiff's strength and pulse were good. (R. 380). These observations by Dr. May are inconsistent with his conclusion that Plaintiff would have difficulty with employment involving ambulation greater than several blocks. Accordingly, these points constitute good reasons for not affording Dr. May's opinion significant weight.

### 2. Dr. May's Statement is Conclusory.

The Commissioner also argues that Dr. May's statement regarding Plaintiff's ability to ambulate is conclusory and, therefore, should not have been given greater weight. (Doc. 10 at 7). Dr. May's statement that Plaintiff would have difficulty ambulating distances greater than a few blocks and doing jobs "involving greater ambulation" than a few blocks because of problems with his left knee and right ankle does little to assist the ALJ in his determination. (R. 381). Dr. May's opinion lacks appropriate detail. Thus, it makes perfect sense for the ALJ to discount its value.

### 3. Plaintiff's Self-reports

The Commissioner further argues that the ALJ's decision to discount Dr. May's statement is appropriate because the ALJ was correct that "[i]t appears Dr. May relied heavily on [Plaintiff's] self-report that he could not ambulate more than several blocks." (R. 31, 378 & 381). The court agrees. Plaintiff's report is inconsistent with much of the remainder of the record. For instance, Plaintiff stated that he does household chores; walks approximately 30 minutes (about three-quarters of a mile) for exercise two to three times a week; regularly watches his grandchildren; and regularly plays golf or hits golf balls.[5] (R. 27, 54, 198, 217). These actions are inconsistent with an inability to ambulate more than several blocks.

In sum, the court finds that the ALJ had and provided good reasons for declining to give significant weight to Dr. May's opinion. *See* 20 C.F.R. § 404.1527(c)(3),(4); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159-60 (11th Cir. 2004) (the ALJ's decision to discount a medical opinion was supported by substantial evidence based, in part, on the fact that the findings were inconsistent with the provider's treatment notes and unsupported by the medical

---

[5] Plaintiff did note that he does not play a full round of 18 holes when he plays. (*See* R. 54 ("I have probably played three rounds of golf that I have not picked up. In other words, I'll pick up or walk two or three holes and then maybe play four or five holes.")).

evidence).

To the extent that Plaintiff argues that the ALJ should have recontacted Dr. May for further clarification on this issue, the court disagrees. (Doc. 8 at 6-7). Plaintiff cites 20 C.F.R. § 404.1519p(b) in support of his argument. It provides, in pertinent part, that if a report is inadequate or incomplete, the ALJ "will contact the medical source" and ask the source to supply the missing information or prepare a revised report. The Commissioner counters that "[t]he absence of a statement about what the claimant can still do despite his impairments in a consultative examination report 'will not make the report incomplete.'" (Doc. 10 at 7 (citing 20 C.F.R. § 404.1519n(c)(6)).

A review of Dr. May's report makes it clear that his conclusion about Plaintiff's ability to ambulate relatively short distances is premised on Plaintiff's statements. (Compare R. 378 & 381). The ALJ's decision to discount Dr. May's opinion was not the result of a misinterpretation, but a consequence of his evaluation of the record, including Plaintiff's statements concerning his activities of daily living. The court finds that the ALJ's decision to afford partial weight to Dr. May's opinion does not warrant a remand for further consideration on this issue.

**B.     RFC**

Plaintiff next challenges the ALJ's conclusion that he could perform medium work. In support of his argument, he states that this conclusion "is contrary to all the medical opinion evidence of record." (Doc. 8 at 8). Specifically, he cites to Dr. May's conclusion that his left knee and right ankle limit his ability to ambulate and the fact that he "needed to brace against the wall when performing the examination." (*Id*. (citing R. 380)). He further cites the opinion of the State Agency Single Decision Maker ("SDM") who found that he was limited to light work. (*Id*. (citing R. 89-91)). Plaintiff asserts that, at a minimum, the case should be "remanded for a full and proper consideration of his medical impairments and their vocational implications." (*Id*. at 9). The Commissioner responds that the ALJ considered all the relevant evidence and that substantial evidence supports his finding regarding Plaintiff's ability to perform medium work. (Doc. 10 at 8-12).

A claimant's RFC is the most he can still do despite his limitations and is based on all the relevant evidence in the case record, including his medical history, medical signs and laboratory findings, the effects of treatment, daily activities, medical opinions, and any medical source statements. 20 C.F.R. § 404.1545; Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *5 (S.S.A. 1996). At

the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c); *see also Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) (noting "the task of determining a claimant's [RFC] and ability to work is within the province of the ALJ, not of doctors"). In assessing the RFC of a claimant, the ALJ may ask for additional opinions from medical experts. *See* 20 C.F.R. § 404.1529(b).

Plaintiff asserts that two specific issues support the need for a reversal or remand of his case: (1) his vertigo, vertiginous syndrome and idiopathic peripheral neuropathy with imbalance and (2) his imbalance and difficulty ambulating. (Doc. 8 at 8). He also states that if he is limited to light work as found by the SDM, he would be deemed disabled under Medical-Vocational Guideline Rule 202.06. (*Id*. at 9 (citing 20 C.F.R. Pt. 404, Subpt. P. App. 1 § 202.06)).

Plaintiff's medical records show in relevant part that he suffers from back pain, a fused right ankle, neuropathy, vertigo, and imbalance issues. To place his situation in context, it is helpful to begin with the fact that Plaintiff has a history of epileptic seizures. He experienced two seizures in 2013. He was placed on medication and has not experienced any further seizures. During his October 2013 neurology visit, Plaintiff reported "no difficulty waking, no memory loss, no headaches, and no imbalance or falling." (R. 354). He was requested to schedule

a return visit one year later. (*Id.*) During his April 2014 primary care check-up, he reported no headaches, no vision problems, and no recent seizures. (R. 362-63). He did complain of poor coordination, but was not experiencing any numbness. (R. 363). His examination findings were all within normal limits with no neurological deficits noted. (R. 362-65). His October 2014 examination was generally unremarkable. He had no additional seizures, he reported no dizziness, and his neurology was grossly intact with no focal deficits. (R. 388-90).

Plaintiff initially notes that he suffers from vertigo and vertigo syndrome and idiopathic peripheral neuropathy with imbalance. (Doc. 8 at 8). His medical records show that in April 2014 Plaintiff complained during an annual checkup that he experienced poor coordination. (R. 362). However, the records show that he "is able to do much of what he wants to, though only for a limited amount of time. He continues to play golf, and recently completed a trip with his grandchildren to Disney World." (*Id.*) He also stated that he exercised regularly. (R. 363). In June 2014, he made his complaints to Dr. May. (R. 378). During his October 2014 neurology visit, he reported experiencing poor balance beginning the first of the year, and difficulty walking in a straight line. (R. 420). He denied any paresthesias to the extremities, headaches, or dizziness, but stated he needed to hold on to a rail when walking down stairs. (R. 420). His diagnosis included

idiopathic peripheral neuropathy and vertiginous syndrome. (*Id*.) Finally, during his February 2016 "Neuro Clinic" visit, he reported that he was still having balance problems, but he denied experiencing any falls, headaches, dizziness, balance problems on positional changes, paresthesias, or vision impairments. (R. 415-22).

As previously noted, the record also shows that during Plaintiff's June 2014 visit with Dr. May, he ambulated "relatively normally without an assistive device," he had normal straight leg raise and range of motion except for diminished ankle flexion extension, he could get on and off the examination table and rise from a chair without assistance, his strength and pulse were good, and he had no cerebellar, cranial nerve, or deep tendon reflex abnormalities. (R. 379-80). Additionally, as also noted, Plaintiff's activities include regularly walking for exercise and playing golf.

Based on the record, the ALJ found that Plaintiff was not as limited as he claimed. (R. 27-30). The ALJ stated that Plaintiff's "allegations are weakened by inconsistencies between his statements regarding daily activities and the medical evidence." (R. 31). The ALJ concluded that Plaintiff's obesity, cardiovascular impairments, and joint pain limit him to performing "at least medium exertional work" with postural limitations. (R. 31). Specifically, in pertinent part, he noted:

> The claimant can also frequently balance and stoop but only
> occasionally crouch, kneel and crawl. Based on his hypertension,
> history of seizure[s], vertigo and idiopathic peripheral neuropathy
> with imbalance, the claimant can only occasionally climb ramps and
> stairs but never climb ladders or scaffolds. He should work in close
> proximity to co-workers or supervisors in order to be under
> observation to monitor potential unplanned seizure activity.
> However, it is noted that the records showed the claimant has had no
> seizure[s] since September 2013; he has reported no dizziness; and
> neurologically he has no focal deficits.... However, he should never
> be exposed to unprotected heights in light of his potential for seizures
> ....

(*Id*. (record citation omitted)).

Light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). Medium work is defined as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). Here, the relevant evidence is Plaintiff's statement to Dr. May that he is able to lift 10 pounds (R. 378); his hearing testimony that he could not lift a 20-pound bag of dog food, but could lift a gallon of tea or milk (R. 63-64); and the SDM's rating that he could occasionally lift 20 pounds and frequently lift 10 pounds (R. 89-90).

The court can find no evidence in the record showing that Plaintiff is capable of lifting 50 pounds at a time and frequently lifting or carrying objects weighting 25 pounds. While Plaintiff is correct that the SDM found that he is

17

limited to light work based on her assessment that he can frequently lift or carry 10 pounds and occasionally lift or carry 20 pounds, there is no evidence in the record supporting this conclusion either. In sum, evidence concerning Plaintiff's ability to lift and carry is absent from the record. The court cannot conclude that there is substantial evidence supporting the ALJ's decision that Plaintiff could perform medium work with limitations. Accordingly, the ALJ's decision in this case is due to be reversed and the matter remanded to the Commissioner so that the ALJ can further evaluate Plaintiff's ability to lift and carry weight in assessing his RFC.

Because the court finds that there is not substantial evidence to support the ALJ's determination that Plaintiff was capable of medium work rather than light work as argued by Plaintiff, the court finds that application of Medical-Vocational Guideline 202.06 should be left for consideration on remand.

## VI. CONCLUSION

For the reasons set for-th above, the undersigned concludes that the decision of the Commissioner is due to be remanded. An appropriate order will be entered separately.

**DONE,** this the 12th day of June, 2018.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge